The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Morning, this is case number 4-23-1248, James Schwartz and Associated Insurance Group v. Illinois Department of Human Rights, Illinois Department of, excuse me, Illinois Human Rights Commission, Illinois Department of Human Rights, and Kelly Francino. We'd first like to start with appearances for the appellant. Good morning, Your Honors. Chris Drinkwine on behalf of the Executor of the Estate of Jerome Schwartz and Associated Insurance Group, Incorporated. And for the appellees. Good morning, Your Honors. Amit Bindra on behalf of Kelly Francino, the Prince Law Firm. My co-counsel Penny Lechtenberg is here too, but I will be doing the argument. Thank you. Good morning. Nancy Jack on behalf of State Respondents, Illinois Human Rights Commission, and Illinois Department of Human Rights. Thank you. For the appellees, it's my understanding that the argument will be split 10 minutes apiece. Mr. Bindra proceeding first and then Ms. Jack, you concluding? Yes. All right. Let's proceed with argument then, Mr. Drinkwine for the appellant. May it please the court and good morning, counsel. Appellants have raised three issues on appeal. They would like to begin by focusing on issues two and three, the excessiveness of the emotional distress damages and the improper sua sponte assessment of pre and post judgment interest. The commission abused its discretion in awarding $325,000 for emotional distress because the amount is excessive, unreasonable, and unfair. And it is the largest amount ever awarded in human rights commission history to a complainant who certainly did not suffer the most severe emotional distress ever. The Illinois Human Rights Act contemplates compensation for emotional harm, but the damages for this type of harm must be kept within reasonable parameters. Damages must be commensurate with the nature and duration of the discriminatory treatment and commensurate with the effect on the complainant because emotional distress damages may not be punitive. In assessing emotional distress damages, courts consider whether the complainant required mental health treatment or sought a therapist, whether she suffered physical manifestations of the emotional distress, whether there was an impact on her family, personal, or professional relationships. And courts also consider the duration and severity or pervasiveness of the harassment. In this case, there was no evidence that Ms. Franchino sought or received mental health treatment or medication, no evidence of physical manifestations of her emotional distress, and no evidence that the emotional distress impacted her family, personal, romantic, or professional relationships. There was no evidence that she suffered stress, sleeplessness, irritability, headaches, nausea, depression, or worthlessness, and no evidence that she thereafter had difficulty working with or trusting men. Instead, Franchino merely testified in conclusory fashion that the sexual harassment was demeaning, hurtful, embarrassing, and harmful to her reputation. Respondents maintain that the photographs in proposed exceptions exhibits 19 and 20 contradict her testimony that she suffered emotional distress. They completely contradict her sworn testimony before that she- That constant emotional distress doesn't have to be a constant state of being. I assume you'd agree that people who are deeply emotionally distressed can have moments where they smile. It seems like we're building a lot on that one picture. Certainly, I would agree, Your Honor, that emotional distress can come and go. The picture serves multiple purposes, but one of them is that this is not a situation where a person who is willingly engaging in that contact, that contact is not unwelcome sexual harassment. He's tethered to the bed with IVs and blood pressure cuffs and so forth. If you don't want that contact, if that contact's not welcome, you simply take two steps away from the hospital bed. The purpose of the statute, or I'm sorry, the photographs, is to show a meritorious defense, but in the context of the emotional distress, it shows that someone who's engaged in that is not someone susceptible to emotional distress as a result of that kind of contact. I think that the pictures can only be interpreted as showing someone who is welcoming the conduct. Absolutely, Your Honor, emotional distress can come and go. The pictures also completely contradict her sworn testimony concerning the purported blackout and being unconscious and not knowing about the picture until the next day when Mr. Schwartz's daughter showed it to her. It has the additional impact of a credibility. Isn't that what a blackout is, that somebody has events that they don't remember? Correct, but I believe the testimony was that she was unconscious in the blackout sense. Obviously, the next day after drinking, if you said, I blacked out, meaning I don't remember, I'm not sure that was the context, but that is subject to interpretation. But even putting the photographs aside, even disregarding the photographs, Franchino's testimony before the Chief Administrative Law Judge came nowhere close to establishing that the impact of the deemed-admitted sexual harassment was so severe to warrant $325,000 in emotional distress damages. The deemed-admitted harassment was very limited in duration. She only worked for the respondents for seven months, and the deemed-admitted sexual harassment occurred over a two-month period. The deemed-admitted physical sexual harassment was limited to the last two weeks of September 2022, and we already talked about the credibility problems with respect to that. Therefore, it's respondents' position that the harassment was not long enough in duration, not severe or pervasive enough to warrant a $325,000 emotional distress award, which is the highest amount ever awarded in commission history. Now, a word on the consideration of other cases. It's important to note that this appellate court in Hobby Lobby, as well as other cases, has indicated that Illinois courts have traditionally declined to compare damages awarded in one case to damages awarded in other cases when determining whether a particular award is excessive. And the courts have also said a party cannot show that damages award was excessive merely by citing other decisions. But respondents submit that traditionally declining from comparing damages awards and the rule that excessiveness cannot be shown merely by citing other cases is not a prohibition on the practice. In fact, the appellate court in Hobby Lobby made damages comparisons to another case right after stating that Illinois courts traditionally declined to do so. It's also important to note that in assessing claims under the Illinois Human Rights Act, the commission and Illinois courts are guided by persuasive federal case law, which regularly compares emotional distress damages awarded in other cases. And only in a few cases within the Seventh Circuit have federal courts upheld emotional distress damage awards in excess of $50,000. Mr. Drinkwine, may I interrupt you for a moment? In regards to the ALJ's award of damages, I'm just going to direct your attention to one portion, and I would like for you to comment on the propriety of this. He says, in granting complainant a higher figure for emotional distress damages than she has requested, I feel compelled to point out that my assessment of complainant's injuries did not arise in principle measure from the verbal testimony she offered at the hearing. Instead, it was carriage and demeanor at the public hearing that persuaded me of the extent of her injuries, which I am permitted to consider when evaluating her credibility. Could you comment on that and tell us whether or not that was proper for the ALJ? Yes, Your Honor. Obviously, any finder of testifying live before them can't be argued otherwise. But the totality of the circumstances in this case, apart from that, still don't warrant a $325,000 damages award for emotional distress. Well, let me interrupt you again. In terms of there's the substance of what a witness testifies to, and then the demeanor of the witness to determine the credibility of the witness, whether or not the finder of fact is going to accept at face value the substance of the testimony. When I read that statement by the ALJ, when he indicates the principle measure in awarding the damages, it seems arguable that what he is saying is that he based his calculation of the damage award based on what he was seeing from the witness stand, her carriage and demeanor, as opposed to what he was hearing in terms of the words that she was speaking. Could you comment on that? Or do you think that is not what the ALJ was saying? I think that's exactly what he was saying, Your Honor. But respondents maintain that that's not enough to support a $325,000 emotional distress damages award. The question, Mr. Inquine, is you can consider how a witness behaves and how their carriage and demeanor is on the stand to assess the credibility of what they said, but I guess the question is can the finder of fact consider the demeanor and carriage of the witness to supply inferences that the person didn't supply with their testimony? Not without articulating that you're making that inference, but I don't think this court can read the language that Justice Harris just read to me and go that far. Mr. Drakewine, just for clarification's sake, that was a softball. Correct. Understood, Your Honor. And the other problem with that sentence that you just read is it discloses an even greater or another abuse of discretion in that the Chief Administrative Law Judge awards $325,000 when the request was $200,000, which is, I think, a good segue into the third appellate contention here where damages are being awarded in this case that are not requested. And before I leave the emotional distress, the argument of the respondents is really fourfold, that she didn't meet her burden of proof to show that the emotional distress wasn't adequately covered through the monetary award of actual damages and that it should be vacated altogether, but also that it's excessive. And they request that this court reduce it to a number under $100,000 and at a minimum and in the alternative, at least to the $200,000 that was requested. So the segue there is that the ALJ, for whatever reason, awarded damages in excess of what was requested. And with respect to the post and pretrial interest, the commission abused its discretion in sua sponte awarding that relief when it was not requested or pleaded by Franchino. In terms of the suggestions that was made by complainant, the $200,000, that was contained in the pre-hearing memorandum, right? The $200,000 for emotional stress, yes. And that was before, was that before complainant testified? I think it would have to be, right? The pre-hearing memorandum came before the testimony. Okay. So why should complainant be bound by a suggestion that came prior to the testimony? Wouldn't it be akin in an injury case to a pretrial demand and then holding the plaintiff to the amount of the pretrial demand if the jury came back with an amount in excess of that? Yeah, but I think that's right. But we're talking about a administrative proceeding with a administrative law judge with the pleadings being what they are and the issues framed as they were. Well, I can see your point if Franchino following the hearing confirmed that the amount, and after evidence had been presented, had confirmed $200,000 was the amount being requested. But it seems like taking the pre-hearing suggestion of $200,000, which came prior to evidence being presented, really is based on circumstances that were dissimilar to what followed the hearing. Everybody now knows more because the evidence has been presented. You know, certainly that could result in a different assessment even by Franchino at that point. But we don't know because we don't know what Franchino would have suggested in that circumstance. Can you comment on that? I can. There was no specific request for a dollar amount during the May 25, 2022 damages hearing. I can't speak right now without putting my eyes on it, so I'm not sure. But I don't think the post-hearing memorandum altered the $200,000 figure. It's important to remember that without the specific request for an amount other than that $200,000, the recommended order and decision doesn't come until seven months later. The evidence was done, it was over, nobody requested a specific amount, and then seven months later, on February 17, 2023, the recommended order and decision comes down and all of a sudden it's $325,000, an amount not requested. So it's respondents' position that that was an abuse of discretion. Well, but you aren't really tying this to the pleadings so much as you are that pre-hearing memo. And we certainly know that in the civil analog that a litigant could ask a for a certain amount on an intangible award of damages and is trying to box himself into a position that's neither too little for their client nor so much that it might offend the trier of fact. But it isn't binding, it's not like a pleading. Why would we treat that as a ceiling the way you're suggesting it would be treated? I understand the remarks and don't disagree with them, your honor. The error with respect to exceeding the amount requested with regard to the emotional distress is dwarfed by the same error with regard to the prejudgment interest, which I'd like to address before my time runs out. So it was an abuse of discretion because that remedy was not requested. And following a default that was entered in this case, it offends fundamental fairness required by the due process that's applicable to any adjudication, including administrative proceedings. This bedrock principle of fundamental fairness is embodied in section 2604.2c of the code of civil procedure, which provides that except in the case of default, the remedies requested from the court do not limit the remedies available. But that doesn't apply to these cases. Well, it's an embodiment of the fundamental principle of due process, your honor, we would argue. I'm sure it's intended to comply with due process. I don't know that it defines it. Perhaps not. But the case law reflects the same concept, the same basic fundamental principle of fairness that when you're faced with a decision of whether to let a case go default or to defend it, you're entitled to rely on what's prayed for in the complaint. So said this appellate court in the state of Hoelland case where the court wrote the purpose of requiring a specific prayer for relief in a complaint is to inform the defendant of the nature of the claims against him and the extent of the damages sought so that he may prepare to meet the demand or permit a default to be taken against him. Despite that clearly established principle, the chief administrative law judge wrote, although complainant did not request this relief in her post-trial brief, I find an award of prejudgment interest is appropriate. After expressly acknowledging that it wasn't requested, the chief administrative law judge Sue Esponte assessed the interest on the back pay without notice. Franchino and the commission acknowledged that that wasn't requested until the January 19th, 2023 petition for attorney's for the ROD. And what is that? Six months after the hearing, that was the first time anybody said anything about prejudgment interest. Dr. Drankwine, now you are out of time. You'll have time and rebuttal. Thank you. Mr. Bindra, you may proceed with your argument. Thank you, your honor. Then good morning again. I plan to use about half our time today. I'll reserve the other half of appellant's time to my colleague and counsel for the state. We're also splitting the argument to avoid repetition, so I'm going to address and focus on damages. My colleague will focus on default and the vacate argument, but I'm happy to answer any questions you all may have. The commission and the department's decision should be affirmed and a remand should be provided to allow Ms. Franchino to recover the additional attorney fees and costs she occurred during the appeal. The commission's orders are reviewed under an abuse of discretion standard. The standard of review for the chief ALJ's finding of facts and entering default is the manifest weight of evidence. Mr. Bindra, I'd like to interrupt you for a moment. Do you remember the passage that I read to Mr. Drinkwine from the ALJ's recommended decision? Can you tell me whether or not it would be appropriate for an ALJ to base an award of damages for emotional distress not on the substance of the testimony or the principal measure, I should say, of the award of an emotional distress damage award, basing that not on the substance of the testimony, but how the witness testified? Of course, Your Honor. I think there's a couple aspects to that. First, I'll just start with that passage. I believe, I don't know the exact page you were quoting, but I know on page 35, the chief ALJ's decision, which is record page 290, or C290, the chief ALJ also explains it was not just the nonverbal aspects of Ms. Franchino's testimony. It was broader than that. What I read from was page 34, C289. He said principal measure, and if it's the principal measure, that's the part I want to ask you about, because certainly there might be some reference made to the manner in which a witness might testify, and that could confirm in the fact finder's mind that what he or she is hearing is credible and supports the ultimate damage award, but here to base in principal measure the damages award based on the witness's carriage and demeanor seems problematic. But I think on page 35, Your Honor, he continues to explain two factors, and that's the main paragraph on that page 35, or C290. There, the chief ALJ explains that complainant provided testimony at the public hearing that she continues to suffer depression, anxiety, uneasiness, insecurity, and trust issues, all of which favor in favor of an award for emotional distress. To Your Honor's point, the chief ALJ also indicated it was the nonverbal aspects of her testimony, but he continues to explain at several points complainant became overwhelmed with emotion, particularly when describing the various instances of unwanted and inappropriate physical touching by the then 83-year-old respondent Schwartz. While these episodes were never deliberating enough that I had to recess the proceedings, they were unquestionably distressing and heartbreaking to watch. Moreover, they aptly demonstrate that an individual who has not easily moved to tears was still very much affected by respondent's unlawful behavior as many as five years after the acts occurred. So to Your Honor's point, I think the chief ALJ is best suited in that moment to assess the emotional distress damages as a fact finder. I know appellants don't cite to any authority indicating that a court or a jury or fact finder cannot award damages higher than what is sought. We cite two pieces of authority from the Seventh Circuit, which did affirm a higher award than what was sought by a plaintiff, the Garcia v. Sigmatron International Incorporated decision from the Seventh Circuit in 2016. There, the court did affirm a jury award in excess of the amount sought at trial and explained, we are aware of no rule prohibiting a jury from awarding more damages than a plaintiff requests, and the defendant cites no authority for this claim. That court then cited the Trestle Industries matter from the Seventh Circuit in 1992. But to Your Honor's point, I think it's a combination of factors. I understand that the chief ALJ may have been moved by the nonverbal testimony, but that nonverbal testimony wasn't alone. And again, the chief ALJ or the fact finder is in best position to determine an award of damages from a credibility standpoint. It's not the only fact. Again, here, we have a situation in which the appellant, Jerry Schwartz, he grabbed Ms. Francino's thigh, her breast. He forcibly kissed her. He called her his girlfriend and prostitute in front of clients and coworkers. He referred to her erectile dysfunction medication as a happy hour time. He groomed her. He treated her like a sex object. He wanted a quid pro quo. When she rejected his sexual advances, he retaliated. He stopped paying her correctly. He took away client leads. He fired her. Mr. Schwartz lied about her to her clients that she couldn't work. And then to compound that harm, his own family and his colleagues turned a blind eye. So her damages weren't just the lost wages. There were all of these factors. And his trauma, and this was demonstrated by the record, caused Ms. Francino to foreclose her home. She was living in a storage base away from her three children. She was so embarrassed she didn't tell her family. And after five years from that termination, she was still- Can I interrupt you just a minute, Mr. Indra? There's one other part that's related to both the requests and the pleadings and the damages that I want you to address. The damages for her interest or liability for interest on a loan and an award of back pay were both made jointly and severally against Schwartz and the corporate entity. But the complaint against Schwartz just talks about the sexual harassment, doesn't even mention her discharge, and doesn't mention the loss of pay, doesn't mention back pay or interest on personal loans. Why would that be a proper element of damages against Schwartz individually when it apparently was not requested against him? Your Honor, I think there's a couple pieces to that. First, I don't know and I don't believe appellants raised that issue on appeal. So that argument may already be forfeited in addition to the issues regarding default judgment. In addition to that, both the pre-hearing memo, the post-hearing memo, they both sought all damages and recovery necessary to make Ms. Franchino whole, which would include her interest penalties and her lost pay benefits. Again, it's 2024. She still hasn't been paid for her unpaid wages from 2016 and 2017. Under the Act, Mr. Schwartz would be an employer and so he would be liable for such misconduct. And so for those reasons, I think that award can be affirmed because, again, A, it's forfeited on appeal. B, it was not raised. There's default issues. And C, this would all fall under the bucket of Ms. Franchino necessarily being made whole. I also want to address the argument my colleague raised, which is the pictures. The issue with these pictures is multifaceted. As this Court already explained, those pictures don't necessarily demonstrate. They demonstrate she was blacked out. They demonstrate a single moment. They don't necessarily demonstrate anything further than that. The pictures also failed to refute any allegations that, and they actually confirm Mr. Schwartz is who Ms. Franchino described. He was asking her to give massages. He was inviting her to a bachelor party. He was retaliating against her for rejecting sexual advances. And for those reasons, he then stopped paying her correctly once she didn't want to engage in a quid pro quo. My colleague raised the issue that Ms. Franchino was, that the lack of witness testimony demonstrates she doesn't have damages. But this creates an impossible crutch 22 because Ms. Franchino was living alone in a storage space too embarrassed to confide in anyone or to tell her own family about her circumstances. And without financial resources, she's still seeking her wages from 2017. The burden of needing additional witnesses to testify or to seek expensive medical treatment should not be placed upon Ms. Franchino to make her whole. The fact that she was suffering alone demonstrates those damages. And again, appellants cite authority to confirm her testimony alone is sufficient. They cite the Warren v. Illinois Human Rights Commission case from 2021, which is a fifth district case. And even Matthews versus Harold Chickenshack, number 45, the commission case from 2012, demonstrates that her testimony alone can be sufficient. I'm going to reserve my last 10 minutes, but in my final 45 seconds, I want to three final pieces. One is that the appellants have not cited at least an argument today, and I don't believe in their briefings, any case from the Illinois appellate courts, which reversed a commission decision upon an abuse of discretion for an emotional damages award, because the standard is very high. Hobby Lobby represented at that time in 2021, the highest damages award ever, and it was affirmed. Again, we don't compare decisions between cases. And my colleague is referring to federal authority, which is comparing Title VII matters, which is not applicable to the Human Rights Act. Not only is the federal standard different, the act's remedies are different. And finally, in terms of the interest penalties, the purpose of the act is to make a complaint at all. She did seek interest penalties also in her petition for fees and costs to which appellants did not respond. Thank you, your honors. Thank you. Ms. Jack, you may proceed with your argument. May it please the court. Assistant Attorney General Nancy Jack, on behalf of state respondents, Illinois Human Rights Commission, and Illinois Department of Human Rights. As counsel for Ms. Franchino mentioned, I will be addressing the default order, but I'm happy to answer any questions about damages that the court might have. I'd also... Could you address the last question I asked, Mr. Bindra? The complaint against Schwartz, there's different counts, right? And as to Schwartz, it didn't seek back pay, doesn't mention discharge or loss of pay, doesn't mention anything about interest on a loan. And yet all those remedies were afforded to her against Schwartz in a default situation. Tell me how that's proper. Yes, your honor. The nature of the administrative proceedings here, the complainant first files her complaint with the Department of Human Rights, who then investigates. And then in this case, they found that there was substantial evidence to file a complaint with the commission. So the Department of Human Rights is actually the one that files the complaint with the commission. It's not the complainant. So at that point in the complaint, it asked for all damages to make the complainant whole. It did not go into specific details, as you mentioned, because I think at this early stage, you're not really sure what evidence will come out as the case progresses. Are you saying that the commission could award relief that isn't requested in the complaint? Well, I think they could award relief that's available under the act. So if the complaint asks for damages under the act to make the complainant whole, the commission can award damages if they're allowed by the act. So a defendant in default has no conception of what those awards might extend to? Well, the word would be limited by the act. So if they're familiar with the act, they would know that the act provides for lost wages. It provides for bad interest. It provides for emotional distress damages. So they would have an idea as to the nature of all the damages that are possible. So our position is there would be no surprise because the complaint did not list every single damage possible. Also, I want to clarify before I talk about the default that the pictures here, they are not evidence in this case. The commission denied petitioner's motion to supplement the record, and this court should reject petitioner's reliance on them. So regarding the default, this court reviews the commission's order for an abuse of discretion. And I'd like to emphasize that this is the most deferential standard of review. And the default was warranted here because when the matter was reassigned to the chief ALJ in 2022, petitioners did not comply with his orders, despite having notice of them. They did not communicate with counsel to prepare the status report. They did not attend the March 8th hearing. They did not communicate with counsel to prepare the pre-hearing memorandum. The corporation did not have an attorney enter an appearance by the required date, and they did not attend the default hearing. Petitioners do not dispute that they did not participate, only that their actions were unintentional because they believe Loftus was handling the matter. However, they should have been aware as of early March 2022, when they received the status report in the mail, that Loftus was not handling the matter. The status report noted that Loftus did not return opposing counsel's call, had not contributed to the report, and had not filed an appearance. And thereafter, the March 8th order stated that no attorney appearance had been filed and nobody appeared for petitioners. The pre-hearing memorandum also indicated petitioners purported counsel was not communicating with opposing counsel. And the April 29th order stated that no attorney appearance had been filed by the required date. So, any alleged inaction or negligence on Loftus' part should be imputed to petitioners because they should have been aware that Loftus was not complying with the orders. Regarding petitioners' claim that Schwartz did not read the orders, and that's on page four of the reply brief, it, first of all, it seems unlikely. But even so, if Schwartz made the conscious choice not to read the orders, the consequences of that choice are on him, and he should not be able to escape liability. For example, if you get a traffic ticket in the mail but do not read it, that does not excuse you from showing up in court or paying the fine. I'm not aware of any situation where a court has condoned that excuse, nor is there a reason to do so here. The Act allows for a default even for a single act of misconduct, such as failing to file a and failing to comply with an ALJ's order. And petitioners did all of the above, as mentioned before. Prior to the chief, I'm sorry, prior to the default, the chief ALJ warned petitioners twice that he may issue a default if they did not comply with his orders. The first warning was in the March 8th order, which provided that if an attorney does not enter an appearance, or if petitioners do not participate in preparing pleadings, a default could be entered. The second warning was in the April 29th order, which provided that if an attorney or Schwartz does not appear, all allegations in the complaint will be deemed true. I'd also like to point out that we know that petitioners' actions were intentional because nothing changed after the default. They still did not participate in the proceedings. They did not show up at the damages hearing. They did not respond to opposing counsel's post-trial brief listing damages. And no attorney appearance was filed until March 2023, which was one year after they were first ordered to do so. So even after the default, petitioners continued their pattern of not participating in the proceedings, which showed a conscious disregard of the commission's authority. I want to go back to my prior question. Why was it that only the complaint against the nominal employer asked for back wages, but not the complaint against the individual? And what's the significance of that in a default setting? I don't know why the complaint was worded how it was, Your Honor. Wording might not quite catch it. I mean, it was what it asked for, not how it said it. It asked for back wages against the agency, but not against Schwartz. I don't know why it didn't ask for it against Schwartz. How is a party in default supposed to know why? How is a party in default supposed to know that if I default, that's going to be my personal responsibility? Well, the Schwartz and the corporation were kind of one in the same. He was the president and owner, and he was the one doing the sexual harassment. So, any claim against the corporation is really a claim against him and vice versa. That's not the impression I get by reading your complaint. I mean, maybe it could have been, but that's not what they say. And again, I would go back to the nature of the administrative proceedings that at this early stage, you're not really sure what the evidence will show, and these administrative proceedings are meant to be informal. I see that my time is up. You can complete your sentence if you would like. The administrative proceedings are meant to be an informal process, and the nature of the Human Rights Act is to prevent sexual harassment and to compensate victims. All right. Thank you. Mr. Drinkwine, rebuttal argument? You may be muted. I apologize. Thank you. The significance of the lack of prayer for the remedies in the Schwartz complaint as opposed to the Associated Insurance Group Incorporated complaint is the same as it is with respect to the lack of a prayer for relief for post and prejudgment interest. It's not fair, and you can't do it. A general prayer for relief, as argued by the commission and Franchino, is insufficient under the Albert case that we cite in our brief. That argument was specifically rejected by the appellate court because a party deciding whether to defend or go to default is entitled to rely on what's alleged in the four corners of the complaint in making that decision. That's basic fundamental fairness, a rule that was violated with respect to the prejudgment interest and the lack of remedies alleged in the complaint against Schwartz, as noted by Justice Dougherty. With respect to the exhibits, the assistant attorney general indicated that they're not part of the record. That's incorrect. They were the subject of a motion to supplement the exhibits to respondents' exceptions to the recommended order of decision. That the commission denied that motion doesn't remove them from the record on appeal. Let's be clear. They're in the record insofar as you can make an argument that the commission abused its discretion in failing to allow that motion, but they're not in the record in terms of the evidence that would support or contradict the award that was made. As you say, Your Honor, they're akin to an offer of proof where the judge denies the admission of evidence, doesn't remove them from the record. They're part of the record. But they are part of the evidence. You have an evidentiary objection that that should have gone in, but because it didn't go in, other than assessing whether that was an abuse of discretion, we can't now throw them into the mix as far as the evidence. Well, respondents make the arguments that they do with respect to the photographs in the environment or the supposition that this court would agree that they should have been permitted to supplement the exhibits to their exceptions to the recommended order and decision. And I want to address various points both here today and in the briefs regarding forfeiture or waiver. Even if there were a waiver or forfeiture in any respect in this case by respondents, which for the various reasons set forth in our brief, we argue does not. As the court is aware, that's a limitation on the parties, not this appellate court. And this court can overlook a party's forfeiture when necessary to obtain a just result. Respondents submit that if there was ever a case where a forfeiture should be overlooked to obtain a just result, it's this case. Based on the excessive $325,000 award for emotional distress damages, the highest in commission history, the bizarre circumstances, which is a nice way of putting ineffective representation by their attorney, where he goes so far as to ask for a default judgment to enter against them. And why isn't your remedy against the attorney? It is, but not before this court. And the fact that the chief administrative law judge awarded remedies that weren't prayed for in the complaint in violation of a fundamental rule of due process, all demonstrate the need for this court to address these issues despite any forfeiture on the respondents part. And one quick word before my time is up on the request that in the event this court affirms that it should be remanded so that attorney's fees and costs additional can be sought. Obviously our position is the case should not be affirmed, but that type of remand was appropriate in the Hobby Lobby case under the section cited of the Illinois Human Rights Act for continuing violations. And the remand was ordered in Hobby Lobby because there was continuing discriminatory conduct in that case. In particular, the Hobby Lobby continued to prohibit the plaintiff who continued to work there from using the woman's bathroom. That's not the circumstance in this case. Franchino did not continue to work at Associated Insurance Group, Incorporated, and she didn't continue to suffer discrimination. So it's respondent's position that even in the event of an affirmance, it's not appropriate to remand. Thank you. Okay. Thank you, Mr. Drinkwine. Thank you, all counsel. The case will be taken under advisement and the court will issue a written decision.